| | |
|---|---|
| ABDULAZEEZ AL AKEEL, | |
| Plaintiff, | |
| *vs.* | CAUSE NO. 1:16-cv-908-DML-WTL |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## Entry on Judicial Review

The defendant Commissioner of Social Security denied plaintiff Abdulazeez Al Akeel's application for disability benefits under the Social Security Act, and Mr. Al Akeel brought this suit for judicial review of that denial. The parties consented to this magistrate judge conducting all proceedings in this case and ordering entry of a final judgment, *Notice, Consent, and Reference of a Civil Action to a Magistrate Judge* [dkt. 12], and the district judge referred the action accordingly, *Order of Reference* [dkt. 15]. The parties have briefed their positions, and the court has fully considered their arguments and the record. For the reasons explained below, the Commissioner's decision denying benefits is REVERSED and REMANDED.

## Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a

scintilla, but less than a preponderance of the evidence. *Wood v. Thompson*, 246

F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person

to conclude that it adequately supports the Commissioner's decision, then it is

substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28

L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This

limited scope of judicial review derives from the principle that Congress has

designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the [administrative law judge], we cannot
> engage in our own analysis of whether [the claimant] is severely
> impaired as defined by the SSA regulations. Nor may we reweigh
> evidence, resolve conflicts in the record, decide questions of credibility,
> or, in general, substitute our own judgment for that of the
> Commissioner. Our task is limited to determining whether the ALJ's
> factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758.

While review of the Commissioner's factual findings is deferential, review of her

legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically-determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months . . . ." 42

U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R.

§ 416.905(a). A person will be determined to be disabled only if his impairments

"are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments must be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If the

3

applicant's impairments do not satisfy the criteria of a listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to satisfy steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow him to perform the full range of work at his assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be

used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

## Background

Mr. Al Akeel applied for benefits under the supplemental security income program in January 2013 (R. 157), alleging that he is disabled because of right-leg amputation below the knee, arthritis in hands, and head pain (R. 174). In subsequent reports to the state agency, he also reported back and neck pain. (R. 187.) At the hearing, he testified that he is unable to work because of his lack of English proficiency, amputated leg, back, broken left arm, right shoulder, and broken left leg. (R. 37.) He testified that his back, right leg, and right shoulder give him the most pain. (R. 42.) He alleged lower back pain (R. 48, 51-52), severe headaches (R. 50), an ill-fitting leg prosthetic that causes pain and makes walking difficult (R. 48), winter/cold related pain from a broken hand or foot (R. 51), shoulder pain (R. 52), and the need to use one or two canes to ambulate, depending on the presence of right shoulder and back pain (R. 52-53). Mr. Al Akeel testified that he can walk for 15 minutes (R. 44), stand for thirty minutes with the help of a cane (*id.*), and sit for thirty minutes (R. 45). He alleges that his disability began on January 1, 2003 (R. 157, 174).

Mr. Al Akeel's claim was denied on initial and reconsideration reviews by the state agency. (R. 68-90, 94-96.) He requested and received a hearing before an ALJ in October 2014, during which he and a vocational expert testified. (R. 29, 97.) Mr. Al Akeel was not represented by counsel when he submitted his application and initial evidence or through the state agency's initial and reconsideration reviews.

(R. 68, 77.) He did not obtain counsel until about eleven months before the hearing. (R. 68, 77, 108, 109.) The ALJ issued his decision in December 2014.

### The ALJ's Findings and Subsequent Review

At step one of the sequential evaluation process, the ALJ found that Mr. Al Akeel has not engaged in substantial gainful activity since his application date in January 2013.

At step two, the ALJ found that Mr. Al Akeel has the severe impairments of right leg amputation below the knee, degenerative disc disease of the lumbar spine, and migraines. He found that the non-severe impairments of degenerative joint disease of the right shoulder and obstructive sleep apnea are also present. He further found that Mr. Al Akeel's histories of the following conditions do not constitute current impairments: polycythemia, gastritis, forearm fractures, high blood pressure, diabetes, acute renal failure and various sinus conditions.

At step three, the ALJ found that Mr. Al Akeel does not have an impairment or combination of impairments, severe and non-severe, that meet or medically equal any of the conditions in the listing of impairments. He considered Mr. Al Akeel's right leg amputation under listing 1.05B (amputation, due to any cause, of one or both lower extremities); his lumbar spine impairment under listing 1.04 (disorders of the spine); and his migraines generally under listing categories 11 (neurological disorders) and 12 (mental disorders).

For the purposes of steps four and five, the ALJ determined Mr. Al Akeel's residual functional capacity ("RFC"). He found that Mr. Al Akeel has the capacity to perform sedentary level work with the following restrictions: use of a hand held assistive device to ambulate and avoidance of concentrated exposure to extreme cold, slippery or uneven surfaces, hazardous machinery, and unprotected heights.

Because Mr. Al Akeel has no past relevant work, the ALJ passed over step four.

At step five, the ALJ considered Mr. Al Akeel's age (thirty-three, a "younger individual"), education (at least high school and able to communicate in English),[2] and RFC to find that a significant number of jobs that he can perform exist in the national economy and, therefore, he is not disabled. In making this determination, the ALJ relied on the testimony of the vocational expert at the hearing, who identified the jobs of assembler-table worker (25,000 jobs nationally), surveillance system monitor (13,200 jobs nationally), and document preparer (64,000 jobs nationally).

Mr. Al Akeel requested review by the Appeals Council in January 2015 (R. 7) and submitted a letter identifying errors in the ALJ's decision (R. 223). He argued that he should have been found disabled at step three because he satisfied the criteria of listing 1.05, amputation. He contended that the ALJ committed several

---

[2] Because Mr. Al Akeel had no past relevant work, the ALJ found that the vocational factor of transferability of job skills was not an issue. (R. 22.)

errors and identified three: (1) much of the evidence regarding the condition and limitations on his amputation, ill-fitting prosthetic, need for assistive devices, lower back condition, and right shoulder condition was submitted after the state agency reviews and was not otherwise reviewed by a medical expert for an opinion on whether all of his conditions in combination medically equal listing 1.05; (2) the ALJ failed to discuss the issue of medical equivalence; and (3) the ALJ failed to consider the limitations on Mr. Al Akeel's ability to communicate in English.

The Appeals Council denied Mr. Al Akeel's request for review, which rendered the ALJ's decision the final decision of the Commissioner on his claim for benefits and the one that the court reviews.

## <u>Analysis</u>

Mr. Al Akeel argues that the ALJ committed eight errors in his decision. The court will address each in turn.

**1. Right shoulder impairment.** Mr. Al Akeel argues that the ALJ erred at step two when he found that Mr. Al Akeel's right shoulder impairment is not severe. He argues that the ALJ (1) failed to consider the contributory effect of this impairment in combination with his other severe and non-severe impairments, (2) improperly applied the twelve-month duration requirement individually to his shoulder impairment, (3) erroneously found that the impairment did not satisfy the duration requirement, and (4) erroneously found that the shoulder impairment was caused by athletic weight lifting.

At step two, the ALJ found that Mr. Al Akeel's degenerative joint disease of the right shoulder is a non-severe impairment. (R. 13.) Although he specifically found that a recent MRI, performed in September 2014,[3] "would support a finding that there is a medically determinable impairment that causes more than minimal limitations" (R. 14), he also found that "there is insufficient evidence in the record to establish the necessary durational requirements" and, therefore, the impairment does not meet the criteria for severe impairment." (*Id.*) Mr. Al Akeel argues that the twelve-month duration requirement does not apply to each individual impairment, "but rather, the durational requirement relates to the period of disability." *Plaintiff's Brief in Support of His Request for Review and Remand of the Commissioner of Social Security's Final Decision* [dkt. 21] ("*Plaintiff's Brief*"), at 24-25, citing 20 C.F.R. § 404.1522 and S.S.R. 96-3p.

Mr. Al Akeel is wrong, because the regulations make clear that the duration requirement applies to each individual impairment. A disability must be caused by one or more "physical or mental impairment(s)," which are "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. The impairment(s) must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. §§ 416.905(a), 416.909. At step two of the

---

[3] The hearing occurred in October 2014 and the ALJ issued his decision in December 2014.

sequential evaluation process, an ALJ considers the medical severity of a claimant's impairment(s): "If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled." 20 C.F.R. § 416.920(a)(4)(ii). A "severe impairment" or combination of impairments is one that "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 416.920(c). Thus, the duration requirement applies to the impairment(s), not to the period of disability, except in a derivative sense because a disability must result from an impairment or combination of impairments that satisfies the duration requirement. While the ALJ found that Mr. Al Akeel's right shoulder impairment is "severe" because it significantly affects his ability to perform basic work activities, he also found that it does not satisfy the duration requirement and, therefore, does not satisfy step two. That finding, alone, is not erroneous because step two contains both severity and duration criteria.

Mr. Al Akeel also contends that his right shoulder impairment does satisfy the duration requirement because "if Plaintiff's degenerative joint disease of the right shoulder is expected to last — and there is no indication from the medical evidence that it will not — for a continuous period of at least 12 months, then the ALJ should have found it severe. Therefore, the ALJ's reasoning that this was of sudden acute onset and therefore does not meet the durational requirement (Tr. 14) is not supported." *Plaintiff's Brief*, at 25. This is merely conclusory. The ALJ cited

11

and discussed the evidence of recent sudden onset corresponding with Mr. Al Akeel's lifting of weights, scant evidence preceding the MRI, lack of objective findings on examination, and lack of significant and consistent subjective complaints, all of which convinced him that the duration requirement was not met. (R. 14.)  Mr. Al Akeel's failure to address this discussion and evidence, instead only asserting the lack of evidence that the duration requirement is *not* met, fails to show that the ALJ's finding was erroneous.  Undeveloped, perfunctory arguments are forfeited.  *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016); *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013).

Mr. Al Akeel also disputes one of the ALJ's statements regarding his shoulder condition.  Medical records of Mr. Al Akeel's visit to an emergency room in March 2014 and his visit to Dr. Sieber in June 2014 note that his shoulder symptoms began after "lifting weights" (R. 482 ("right shoulder pain since yesterday after lifting weights") 468 ("heavy lifting"), 469 ("He does lift weights occasionally")), which the ALJ construed as lifting weights "at the gym" or "as in performed at a gym" (R. 14, 19).  Mr. Al Akeel is correct that none of these records (nor a third similar notation in a 2012 medical record) indicate that the weight lifting was of an athletic type, as done in a gym.  He also cites a notation in the HPI (history of present illness) section of the ER report that Mr. Al Akeel "was lifting a box overhead to stack at home" when he felt pain at his right shoulder.  (R. 479.)

The problem is that Mr. Al Akeel does not show the materiality of this apparent error by the ALJ.  Contrary to Mr. Al Akeel's assertion that, by

characterizing the weight lifting as athletic-type lifting, the ALJ was attempting to minimize the significance of the evidence of his shoulder condition, *Plaintiff's Brief*, at 25-26, or failed to consider it in context, *id.*, at 26, the ALJ's discussion demonstrates that what was important to the ALJ was what this evidence showed about Mr. Al Akeel's symptoms having a "rather sudden acute onset" and "a more recent onset" (R. 14), in the context of the duration requirement, not that the condition did not exist or that the degree of Mr. Al Akeel's reported symptoms was not credible. Whether Mr. Al Akeel's right shoulder symptoms manifested after gym-related or activity-related weight lifting was unimportant to the ALJ's duration analysis. The ALJ cited the recent onset of symptoms (March 2014), the scant evidence before the September 2014 MRI, the lack of objective findings, and the lack of significant and consistent complaints as evidence that the condition did not satisfy the duration requirement. (The ALJ later relied on his apparent misinterpretation of the weight lifting references in support of his credibility analysis finding, which is discussed below.) Mr. Al Akeel has not shown that the ALJ's mistake regarding the type of weight lifting involved was material to the ALJ's duration finding at step two.

Finally, Mr. Al Akeel argues that the ALJ failed to consider his right shoulder impairment in combination with his other severe and non-severe impairments. But he neither explains what additional limitations his shoulder condition imposes in combination with his other impairments (for the required

13

duration) nor cites to supporting evidence. Simply asserting that the ALJ failed to consider the impairment in combination is insufficient.

The court finds no error in the ALJ's determination that Mr. Al Akeel's right shoulder impairment was not severe.

**2. Mental impairment.** In January 2013, Jana Treadway, a nurse practitioner and Mr. Al Akeel's primary care provider, examined him during an office visit. Part of the examination included some type of mental status component. Ms. Treadway briefly noted normal signs in four mental status categories: (1) for "judgment, insight," she wrote "intact"; (2) for orientation, she wrote "oriented to time, place, and person"; (3) for memory, "intact for recent and remote events"; and (4) for mood and affect, she wrote "no depression, anxiety, or agitation but stressed." (R. 311.) Three months later, in April 2013, the state agency referred Mr. Al Akeel to Jason Hankee, Ph.D., for a consultative mental status examination. (R. 334.) While Dr. Hankee reported many normal results, he also diagnosed Mr. Al Akeel with adjustment disorder, not otherwise specified, and assessed him with a Global Assessment of Functioning score of 50, indicating "serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job, cannot work)." In April and June 2013, state agency psychologists evaluated Mr. Al Akeel's mental status following the Commissioner's prescribed psychiatric review technique. Reviewing the evidence of record, including both Ms. Treadway's and Dr. Hankee's reports, both psychologists

found that a medically determinable mental impairment, "affective disorders," is present but that it does not satisfy the paragraph B or C severity criteria of the listing of impairments and is not severe.  (R. 71-72, 81-82.)

Mr. Al Akeel argues that the ALJ erred by not conducting any analysis of his mental impairment and by failing to mention or discuss any of the relevant psychological evidence, which is "direct evidence of a severe psychological determinable impairment," the ALJ should have considered.  *Plaintiff's Brief*, at 28. He contends that the evidence shows that he has had traumatic events in his life, understands very little English, made mistakes on certain tasks during his mental status examinations, reported occasionally experiencing physical symptoms when he is upset, reported memory and concentration problems to Ms. Treadway, and complained of many stressors in his life.

In his decision, the ALJ included only two comments regarding Mr. Al Akeel's mental status:  he wrote that Ms. Treadway's mental status testing was normal and that Dr. Hankee's mental status examination was "unremarkable."  (R. 20.)  In addition to not mentioning the facts Mr. Al Akeel identifies above, the ALJ did not mention, let alone adopt, the state agency psychologists' opinions regarding Mr. Al Akeel's alleged mental impairment.  While the court does not find that the ALJ was required to mention every piece of evidence that Mr. Al Akeel contends is relevant to his mental condition and it does not find that the unmentioned evidence shows a severe psychological impairment, the court does find that the state agency psychologists' opinion that Mr. Al Akeel has a medically determinable impairment

of affective disorders and Dr. Hankee's diagnosis of an adjustment disorder and assessment of a severe G.A.F. of 50 are significant enough evidence that the ALJ should have addressed them and articulated why he concluded that Mr. Al Akeel does not have a mental impairment, that it was not severe, and/or that it did not have any functionally limiting effects.

For this reason, the Commissioner's decision will be reversed and remanded for reconsideration of any mental impairment at steps two, three, and five.

**3. Listing 1.05 B analysis.** The ALJ considered Mr. Al Akeel's right leg amputation under listing 1.05B and found that it does not satisfy the criteria because the evidence does not establish stump complications of the required duration resulting in a medical inability to use a prosthetic device to ambulate effectively. He found that the evidence demonstrates that Mr. Al Akeel is able to use a prosthetic and to ambulate effectively. (R. 15.) His hypothetical to the vocational expert defined the same restriction. (R. 56.) Mr. Al Akeel argues that this finding is erroneous for three reasons.

First, he contends that the finding is inconsistent with the ALJ's RFC restricting Mr. Al Akeel to "work that allows him to use a hand held assistive device to ambulate." (R. 16.) Ineffective ambulation means "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) *that limits the functioning of both upper extremities*." 20 C.F.R. Part 404, Subpt. P, App. 1, Part A, § 1.00B2b(1) (emphasis added).

Effective ambulation means sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living and traveling without companion assistance to and from a place of employment or school. *Id.*, § 1.00B2b(2). The regulation gives examples of ineffective ambulation, including "the inability to walk without the use of a walker, two crutches or two canes . . . ." *Id.*, § 1.00B2b(2). The ALJ's restriction of Mr. Al Akeel to work allowing the use of "a hand held assistive device," without further qualification, contemplates the use of a walker or other device that similarly could limit the functioning of both of Mr. Al Akeel's arms and, thus, is inconsistent with the ALJ's step three finding that Mr. Al Akeel is able to ambulate effectively (*i.e.*, that he can ambulate with an assistive device that limits the functioning of only one arm).

Second, Mr. Al Akeel argues that the ALJ failed to evaluate "the multitude of evidence related to Plaintiff's ambulation difficulties." Mr. Al Akeel cites recorded observations in the record of his limping, favoring his right leg, and using a cane, and his testimony that he sometimes uses one cane and sometimes two canes. However, the ALJ did discuss evidence showing, among other things, Mr. Al Akeel walking and maneuvering with a prosthetic and without an assistive device, medical opinion that he did not need any ambulatory aid but could perform normal movements, and unremarkable examinations (R. 17), and he concluded that "[t]here are few findings to support the claimant's allegations of limitation in function associated with the right leg amputation" and that "the examination findings do not support the pain symptoms to the degree alleged . . . " (*Id.*). An ALJ is not required

to mention every piece of evidence or all content of every piece of evidence. Because the ALJ adequately explained his rationale and the court is able to trace his reasoning, Mr. Al Akeel has not shown error in this regard.

Third, Mr. Al Akeel argues that the ALJ's finding that "[t]he medical and other evidence of record demonstrates that the claimant is able to use a prosthetic . . ." (R. 15) is flawed and incomplete because it failed to address the evidence that Mr. Al Akeel complained about problems with his prosthetic, that Dr. Sieber's examinations confirmed problems, and that Dr. Sieber recommended that Mr. Al Akeel could benefit from a reexamination of the prosthetic to see if it could be redesigned to provide a better fit. As noted above, the ALJ discussed evidence showing Mr. Al Akeel's unremarkable and successful use of the prosthetic without assistance, and he specifically noted Dr. Sieber's recommendation that he explore a redesign for a better fit. (R. 17.) The ALJ concluded that the medical evidence does not establish stump complications resulting in a medical inability to use a prosthetic that has lasted or is expected to last at least twelve months. (R. 15.) Mr. Al Akeel has not shown that the ALJ failed to articulate adequately his evaluation of the evidence or his finding that any issues with the fit of his prosthetic has lasted or is expected to last for at least twelve months.

Mr. Al Akeel has shown that the ALJ's step three finding that he is able to ambulate effectively with a prosthetic is inconsistent with his RFC determination that restricts him to work that allows the use of an assistive device that might limit the functioning of both arms. The Commissioner's decision will be reversed and

18

remanded for reconsideration or clarification of the ALJ's finding and/or RFC definition.

### 4. Updated medical opinion regarding

**medical equivalence.** Mr. Al Akeel argues that the ALJ was required to obtain an updated expert medical opinion on the issue of medical equivalence because significant new evidence entered the record after the state agency experts had rendered their opinions on initial and reconsideration review. 20 C.F.R. § 404.1526(e); S.S.R. 96-6p ("an administrative law judge . . . must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments").

Mr. Al Akeel cites three relevant items of evidence that entered the record after the state agency reviews: (1) the September 23, 2014 MRI of his right shoulder; (2) the MRI of his lumbar spine of the same date; and (3) Dr. Sieber's notes of an August 2014 examination regarding Mr. Al Akeel's concerns about his stump, low back pain, and right shoulder pain. But Mr. Al Akeel does not put this evidence in the context of the previous record nor show why the new evidence might have changed the state agency medical experts' opinions on medical equivalence.

Mr. Al Akeel has not shown that the ALJ erred by not calling for a supplemental medical opinion on medical equivalence.

**5. Lack of expert medical opinion on additional evidence.** As noted above, the two September MRIs (right shoulder and lumbar spine) and Dr. Sieber's August 2014 visit notes entered the record after the state agency experts had conducted their reviews and rendered their expert opinions. Mr. Al Akeel argues that the ALJ erred by interpreting this evidence on his own and concluding that it is consistent with an RFC for sedentary work, rather than calling for a supplemental medical expert review and opinion. However, again, Mr. Al Akeel offers no explanation of what aspects of the MRIs or Dr. Sieber's notes required expert medical interpretation or their significance in the context of the ALJ's findings and conclusions. As discussed above, the ALJ found that Mr. Al Akeel's right shoulder impairment did not qualify as a severe impairment at step two because it did not satisfy the duration requirement. (R. 14.) He also found that Dr. Sieber's recommendation in August 2014 was for Mr. Al Akeel to explore obtaining a better fitting prosthetic and that, otherwise, his examination was unremarkable. (R. 17.) The ALJ also noted that Dr. Sieber's examination notes regarding Mr. Al Akeel's lower back pain were missing, that Dr. Sieber rendered no opinion regarding a level of functional limitation resulting from Mr. Al Akeel's back condition, and that he drew no inference regarding duration of the condition or resulting limitations. (R.19.) Mr. Al Akeel does not identify or explain which of these findings or conclusions would be changed by which aspects of the new evidence, and the court will not undertake that analysis on its own. Mr. Al Akeel has not shown error.

**6. Weight assigned to Dr. Ward's opinion.** Mr. Al Akeel describes John B. Ward, M.D., as one of his primary care physicians, *Plaintiff's Brief*, at 12, and the attending physician during his physical therapy sessions in November and December 2013, *id.*, at 37. In November 2013, Dr. Ward completed a one-page questionnaire, *Statement of Medical Condition for Determination of Participation in the IMPACT Program*, for Indiana's Family and Social Services Administration, Division of Family Resources for the purpose of determining Mr. Al Akeel's eligibility for receiving job training and employment from the state. (R. 407.) On this questionnaire, Dr. Ward gave diagnoses for Mr. Al Akeel of back pain, right leg amputation, right knee instability, and arm fractures. For "General Strengths and Capabilities," Dr. Ward described quite severe limitations. He answered that Mr. Al Akeel can sit for a maximum of one hour, stand for one-half to one hour, walk for one-half hour, and lift five to ten pounds; he can grasp; and he is unable to push/pull or bend. He also wrote that Mr. Al Akeel can work only twenty to thirty hours per week. (R. 407.)

The ALJ gave "little weight" to Dr. Ward's opinions on the questionnaire because (1) there is little if any objective medical evidence in the record supporting them, (2) no other treating or examining source endorsed such severe limitations, (3) they are not supported by clinical findings in the record, (4) they are contrary to the opinions of other examining and treating sources, and (5) they are inconsistent with Mr. Al Akeel's own statements and testimony. (R. 21.)

Generally, the Commissioner gives more weight to opinions from treating sources, over only examining and non-examining sources. If a treating source's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, then the Commissioner will give it controlling weight. 20 C.F.R. § 416.927(c)(2). If the treating source opinion is not given controlling weight, the Commissioner considers the following factors in determining the weight to assign the source's opinion: length of the treating relationship and the frequency of examination, nature and extent of the treatment relationship, supportability (amount of relevant supporting evidence (particularly medical signs and laboratory findings) and explanations the source provides), consistency with the record as a whole, relevant specialization of the source, and other factors (*e.g.*, the source's understanding of the standards governing disability under the Social Security Act and the extent to which the sources is familiar with the other evidence of record). 20 C.F.R. § 416.927(c)(2)-(c)(6).

Mr. Al Akeel argues that granting Dr. Ward's questionnaire opinions little weight was erroneous because Dr. Ward was a treating physician, his opinions related to the conditions for which he treated Mr. Al Akeel, he supported his opinion with his diagnoses, his opinions are consistent with the 2014 MRIs, and the opinions are consistent with Mr. Al Akeel's own statements and testimony. However, the ALJ was well aware that Dr. Ward was a treating source, but, as

22

noted above, he gave reasons for not granting his opinions controlling weight. That Dr. Ward's opinions relate to the conditions for which he was treating Mr. Al Akeel simply shows relevance. It is not what the specialization factor considers: giving more weight to the opinion of a specialist whose specialty directly pertains to the subject of the opinion. There is no indication in the cited evidence what Dr. Ward's specialization is or how it relates to Mr. Al Akeel's conditions or treatments. Likewise, the supportability factor does not look for diagnoses; rather, it looks for the evidence supporting the diagnoses and other medical opinions. Dr. Ward's diagnoses do not support his opinions about the severity of Mr. Al Akeel's impairments and their limiting effects. The medical signs, laboratory findings, and explanations that underlay Dr. Ward's opinions regarding the severity and limiting effects of the conditions that he has diagnosed are the important factors, and Mr. Al Akeel has not pointed to record evidence that tends to show the weight the ALJ accorded Dr. Ward's opinions was improper. Finally, Mr. Al Akeel fails to explain how the 2014 MRIs support Dr. Ward's opinions about the degree of functional limitations that his conditions cause.

Mr. Al Akeel fails to address the ALJ's reliance on the absence of supporting objective evidence for Dr. Ward's opinions, inconsistent treating and examining opinions, and the lack of any indication by Dr. Ward of the medical bases for his opinions. He has failed to show that the ALJ's weighing of Dr. Ward's opinions is erroneous, and the court concludes that his determination in this regard is supported by substantial evidence.

**7. Credibility determination.** Mr. Al Akeel argues that the ALJ's determination of the credibility of his statements describing the severity and limiting effects of his symptoms is erroneous. He contends that the ALJ discredited his statements because, first, Mr. Al Akeel had engaged in "athletic activity" which was inconsistent with his allegations (R. 39-40) and, second, the objective medical evidence doesn't substantiate his allegations (R. 40). Mr. Al Akeel argues that the first reason is incorrect because, as described above, the ALJ simply misunderstood the record references to "weight lifting" and "lifting weights" to mean athletic weightlifting, as in a gym, when, in fact, they mean simply lifting loads, as indicated in the emergency room report regarding his strained shoulder after he lifted a box for stacking. Second, he argues that, according to Social Security regulation and policy, lack of confirmatory objective medical evidence for subjective symptoms alone is insufficient to discount a claimant's credibility.

Mr. Al Akeel does not specify the impairments or symptoms to which the discredited statements related, but it is apparent that his argument is limited to the ALJ's credibility findings regarding his statements about his right shoulder and low back pain because the ALJ did not mention Mr. Al Akeel's weight lifting as reasons to discredit his statements about ambulation or migraines.

Addressing Mr. Al Akeel's low back pain, the ALJ found that he was not entirely credible because his "allegations of pain and limitation are not in proportion with the objective medical evidence throughout the period under review," he did not consistently complain of back pain and limitation, and he did not seek or

receive much treatment. (R. 17-18.) The ALJ cited the following facts in support:
(1) although he reported to Ms. Treadway in January 2013 that he had a history of
low back pain since 2006 and constant lower lumbar back pain that can radiate
down his left leg with left thigh muscle tightness, and although Ms. Treadway's
examination revealed lumbar tenderness and a decreased range of lumbar motion,
her examination also demonstrated that he could walk unaided with his prosthetic,
he had normal left leg range of motion with good strength and stability, and she
only referred him to a physiatrist for further evaluation; (2) a March 2013 X-ray
study was unremarkable; (3) during an April 2013 examination by state agency
consultant Wallace Gasiewicz, M.D., Mr. Al Akeel reported severe limitations, but
Dr. Gasiewicz found a good range of lumbar motion, normal muscle strength in all
groups, no unsteadiness, negative straight leg testing, normal coordination, ability
to perform normal movements (walking, sitting, squatting, bending), no need for an
assistive device for ambulation, and he did not endorse any significant limitations of
work-related activities due to lumbar dysfunction; (4) reports of lumbar dysfunction
were noticeably absent from December 2013 to the end of June 2014; and (5) during
a June 2014 visit, Mr. Al Akeel reported getting little treatment for his back,
walked with a normal gait, and had normal range of motion, strength, sensation,
and reflexes. The ALJ concluded that Mr. Al Akeel's statements were not fully
credible because (1) there was a lack of consistent subjective allegations and
treatment; (2) except for one course of physical therapy, he was not taking pain
medication or seeing a specialized treating source; (3) he was engaged in weight

lifting and working out in the gym; and (4) there was an absence of significant opinions or findings up to late June 2014.  (R. 18-19.)

As discussed above, the ALJ may have incorrectly inferred from the record that Mr. Al Akeel did weight lifting.  Because of this possible mistake, and the evident weight that the ALJ laid upon it, his credibility determination is flawed.  On remand, the Commissioner must address whether a mistake was made and, if so, must undertake the appropriate reassessment of Mr. Al Akeel's credibility regarding his right shoulder and lumbar impairments and limitations.

While Mr. Al Akeel is correct that lack of substantiating objective medical evidence is not a legitimate reason for discrediting a claimant's descriptions of subjective symptoms, S.S.R. 96-7p, an ALJ can consider evidence that is inconsistent with a claimant's allegations when evaluating how credible those allegations are.  *See Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013).  As summarized above, the ALJ cited normal lumbar and left leg ranges of motion, muscle strength, sensation, and reflexes despite Mr. Al Akeel's reports of severe symptoms; expert medical opinion that he could perform normal walking, sitting, squatting, and bending, and had no significant lumbar-related work limitations; and inconsistent complaints and little treatment.  This evidence tends to be inconsistent with the extent of symptoms and limitations alleged by Mr. Al Akeel and, therefore, was legitimately relied upon by the ALJ as a reason to find his allegations to be not entirely credible.

Mr. Al Akeel has shown that the ALJ likely committed error when he relied on Mr. Al Akeel's perceived engagement in athletic weight lifting to discredit his allegations about the severity of his right shoulder and lumbar symptoms and their resulting functional limitations. On remand, this issue must be reconsidered.

**8. Ability to communicate in English.** In assessing Mr. Al Akeel's vocational profile for his step five determination, the ALJ simply stated that Mr. Al Akeel is able to communicate in English. (R. 22.) There is significant evidence that Mr. Akeel might have difficulties with communicating in English, *see*, *e.g.*, R. 29 (use of an interpreter at the hearing, difficulty with answering questions), 335 (Dr. Hankee's report of his mental status examination, noting that Mr. Al Akeel "seemed to understand very little English and generally did not respond in English"), 469 (Dr. Sieber noting that Mr. Al Akeel showed up with an interpreter and does not speak English)), which the regulations recognize as a significant vocational factor that can limit the number of existing jobs that a claimant can perform, 20 C.F.R. § 416.964(b)(5). But there is also evidence in the record tending to show that Mr. Al Akeel can sufficiently communicate in English, and the Commissioner argues that this contrary evidence is substantial evidence supporting the ALJ's finding. The problem, however, is that the ALJ did not address this issue and it is only *his* rationale, not the Commissioner's, that is relevant and reviewable. The absence of any discussion in the ALJ's decision not only prevents the court from reviewing the ALJ's finding but prevents the court from even assuming that the ALJ recognized and resolved the evidentiary conflicts. Mr. Al Akeel has shown that two of the three

jobs identified by the ALJ that he can perform — surveillance system monitor and document preparer — require levels of English proficiency that he might not be able to meet. The vocational expert testified that an individual who cannot meet those levels cannot perform the jobs. (R. 62-63.)

Therefore, the Commissioner's decision will be reversed and remanded for evaluation of Mr. Al Akeel's ability to communicate in English, consideration of the effect of his ability on the number of jobs that he can perform, and adequate articulation of that evaluation and consideration, including findings and reasons for resolutions of factual issues.

## Conclusion

The Commissioner's decision denying Mr. Al Akeel's claim for S.S.I. disability benefits is reversed and remanded. Consistent with the above discussion and rulings, the Commissioner shall, on remand: (1) evaluate whether Mr. Al Akeel has a mental impairment and, if so, assess its severity, resulting functional limitations, and effects at steps two, three, and five; (2) address the apparent inconsistency between the ALJ's finding that Mr. Al Akeel can ambulate effectively and his RFC limitation to jobs allowing use of an assistive device that could limit the functioning of both arms; (3) consider whether the ALJ made a mistake regarding the nature of record references to Mr. Al Akeel's weight lifting and, if so, reassess the credibility of Mr. Al Akeel's statements regarding his lumbar and right shoulder impairments and the effects of that reassessment on the disability determination; and (4)

evaluate Mr. Al Akeel's ability to communicate in English and the effects of that ability on the jobs he can perform.

So ORDERED.

Date: 8/25/2017

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.